UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

J.T.,

    Plaintiff,

v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 17-1319 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff, J.T., is the mother of V.T., an elementary-school student who suffers "from an autism spectrum disorder that interferes with his education," Am. Compl. ¶ 4, ECF No. 14, and is entitled to protections under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. In this lawsuit, J.T. appeals three separate Hearing Officer Determinations ("HOD") resolving separate administrative complaints under the IDEA. The first HOD, dated June 13, 2017 ("June 2017 HOD"), summarily rejected J.T.'s due process claim that the District of Columbia Public Schools ("DCPS") violated the IDEA by failing to schedule an April 2017 meeting to revise V.T.'s individualized education program ("IEP") "at a mutually agreeable location." Am. Compl. ¶¶ 3, 16, 18. The second HOD, dated November 27, 2017 ("November 2017 HOD") largely rejected J.T.'s claim that an IEP developed on May 3, 2017 ("2017 IEP") for V.T. failed to provide V.T. with a free appropriate public education, or FAPE, as required by 20 U.S.C. §1412(a)(1)(A). *Id.* ¶¶ 3, 17. Finally, the third HOD, dated April 15, 2018 ("April 2018 HOD"), arising from an administrative proceeding brought by the District against J.T., ordered J.T. to participate in a future IEP meeting to revise the 2017 IEP. *Id.* ¶¶ 3, 19.

1

Following referral of this case to a Magistrate Judge, *see* Referral Order, ECF No. 4, the parties filed cross-motions for summary judgment, *see* Pl.'s Mot. Summ. J. ("Pl.'s Mot."), ECF No. 26; Def.'s Cross-Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 27. The Magistrate Judge issued a report, finding that J.T.'s challenge to the June 2017 HOD is "wrong both factually and legally," Report and Recommendation ("R&R"), at 22, ECF No. 34, and that her challenge to the November 2017 HOD and April 2018 HOD are each moot, *id.* at 26–30, 36–38, and, in any event, meritless, *id.* at 30–35, 39–47. Thus, the Magistrate Judge recommended denying J.T.'s motion for summary judgment and granting the District's motion. *Id.* at 47.

J.T. timely objected to the R&R. *See* Pl.'s Obj. to R&R ("Pl.'s Obj."), ECF No. 35; FED. R. CIV. P. 72(b)(2); LCvR 72.3(b). Those objections, however, are limited to the recommended resolution of J.T.'s challenge to the November 2017 HOD rejecting her administrative complaint that the 2017 IEP failed to provide V.T. with a FAPE. *Id.* at 1. Consequently, J.T. has waived any objection to the portions of the R&R resolving disputes about the location of the 2017 IEP meeting, at issue in the June 2017 HOD, and the order that J.T. participate in a subsequent IEP meeting, at issue in the April 2018 HOD. *See Thomas v. Arn*, 474 U.S. 140, 149–55 (1985) (explaining that a party may waive the right to appellate review of a Magistrate Judge's decision if the party fails to timely object); *see also* LCvR 72.3(b); R&R at 48 (notifying parties that failure to object to the R&R may waive the right to seek appellate review). The Court adopts the portions of the R&R explaining why those claims are meritless, R&R at 22–26, and moot, *id.* at 26–30, respectively, and the District's motion for summary judgment as to the claim related to the June 2017 HOD is granted and the claim related to the April 2018 HOD is dismissed as moot.

As to the contested part of the R&R, the Magistrate Judge correctly explained that J.T.'s claim regarding the November 2017 HOD is moot because the challenged 2017 IEP already has been modified and no claim for compensatory education has been made. Therefore, as discussed in more detail below, that component of J.T.'s case is dismissed as well.[1]

## I. BACKGROUND

### A. Administrative Proceedings

The R&R gives a comprehensive account of these parties' history. *See* R&R at 2–19. Only the facts that bear on the mootness of J.T.'s challenge to the November 2017 HOD concerning the adequacy of V.T.'s 2017 IEP are repeated here.

In April 2017, following the resolution of an administrative complaint not at issue here, DCPS was ordered to convene a meeting to revise several parts of V.T.'s IEP. ECF No. 17-4 at 71[2]; *see also* R&R at 5–6. At that meeting, which took place on April 27, 2017, ECF No. 17-2 at 24; *see also* R&R at 10 n.5, disagreements emerged between V.T.'s parents and DCPS about V.T.'s IEP, ECF No. 18-1 at 1–45; *see also* R&R at 10–11. Specifically, V.T.'s parents believed that V.T. could not succeed in a classroom with a student-to-adult ratio of 4:1 and that he needed a classroom of less than eight students. ECF No. 18-1 at 15–16; *see also* R&R at 11. Additionally, the parents advocated for the IEP to restrict V.T.'s classmates to students unlikely

---

[1] Although the Magistrate Judge considered two of J.T.'s claims moot, the R&R recommended granting the District's motion for summary judgment as to each. R&R at 1–2, 47. Yet, if a claim is moot, the proper course is dismissal for lack of jurisdiction. *See Am. Bar Ass'n v. FTC.*, 636 F.3d 641, 644 (D.C. Cir. 2011) (directing district court to dismiss case rendered moot during litigation); *see also Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 629 (D.C. Cir. 2002) (same).
[2] The administrative records for the three HODs appealed by J.T. have been filed on the docket. *See* Administrative Record No. 2018-57, ECF No. 15 (April 2018 HOD); Administrative Record No. 2017-118, ECF No. 16 (June 2017 HOD); Administrative Record No. 2017-188, ECF Nos. 17 & 18 (November 2017 HOD). The District numbered the administrative record pages in a manner that has made uniformly referencing them a challenge. For simplicity, the Magistrate Judge's citation convention is adopted and citations to pages in the administrative record are to the number applied by the Court's electronic filing system.

to engage in outbursts and to require that V.T. be in a quiet classroom for all instruction, rather than just a quiet area of the classroom. ECF No. 18-1 at 21–22; *see also* R&R at 11. For lunch and recess, V.T.'s parents wanted him with no more than 25 other students, and wanted no more than ten students to be in the hallway at the same time as V.T. ECF No. 18-1 at 23; *see also* R&R at 11. Finally, V.T.'s parents wanted his classmates to remain the same as V.T. moved between different instruction sessions throughout the day. ECF No. 18-1 at 23; *see also* R&R at 11–12.

On May 3, 2017, DCPS issued a new IEP for V.T. ECF No. 17-5 at 1–30. Against the parents' wishes, this 2017 IEP permitted a 4:1 student-to-adult ratio and capped V.T.'s class at eight students. ECF No. 17-5 at 26; *see also* R&R at 12. V.T. would be taught in a quiet part of the classroom and no limitations were imposed on how many students V.T. would share lunch, recess, or the hallway with. ECF No. 17-5 at 26; *see also* R&R at 12. Finally, the IEP did not require that all V.T.'s classmates remain the same across V.T.'s classes. ECF No. 17-5 at 26; *see also* R&R at 12.

Two months later, in July 2017, V.T.'s parents filed an administrative complaint, alleging the "[d]evelopment of an inappropriate IEP." ECF No. 17-1 at 3. The complaint alleged 12 ways in which the 2017 IEP was inadequate, including "too large a class"; "too high a student/adult classroom ratio"; "does not prescribe a quiet classroom"; "does not appropriately limit group sizes outside of the classroom"; and "does not prescribe that the student will attend all specials with the same small group as his academic class." ECF No. 17-1 at 5. While that administrative complaint was pending, DCPS agreed to fund V.T.'s education at Kingsbury Day School for the 2017–18 school year. ECF No. 17-5 at 42.

By the time of the administrative hearing for J.T.'s complaint, the complaint had been winnowed down to seven reasons that the 2017 IEP failed to provide V.T. with an appropriate education: the IEP (1) permitted too large a class size; (2) permitted too high a student-to-adult classroom ratio; (3) did not require a quiet classroom or limit noise and distractions outside the classroom; (4) did not appropriately limit groups permitted outside the classroom; (5) did not appropriately limit hallway activity; (6) did not mandate that V.T. would remain with the same small group of students for the entire school day; and (7) did not prescribe a location where V.T. would receive educational services. ECF No. 18-2 at 60–61; *see also* R&R at 13–14.

The hearing officer resolved the administrative complaint in the November 2017 HOD, deciding that, "[i]n light of DCPS' responsibility for ensuring that Student's IEP adequately meets Student's needs and is not overly restrictive, . . . the May 3, 2017, amended IEP was reasonably calculated to provide Student educational benefit based upon the information available to the full IEP team at the time it was developed." ECF No. 18-2 at 70.

On July 10 and 13, 2018, V.T.'s IEP team met and amended V.T.'s IEP. Def.'s Mot., Ex. 1, Annual IEP Meeting Notes, ECF No. 27-1; *see also* Pl.'s Obj. at 10 n.4 ("J.T. does not dispute that DCPS developed a new IEP . . . . ").

**B.    Procedural History**

J.T. instituted this action on July 2, 2017, *see* Compl., ECF No. 1, but amended the complaint on May 31, 2018 to include an appeal of the November 2017 HOD denying her challenge to the 2017 IEP, *see* Am. Compl. ¶¶ 3, 17. To remedy the injuries visited upon V.T. by the 2017 IEP's alleged deficiencies, J.T. sought a declaration that DCPS denied V.T. a FAPE and an order that DCPS change the 2017 IEP to comport with J.T.'s requests. *Id.* at 6. As already noted, the Magistrate Judge to whom this case had been referred for full case

management, *see* Referral Order, recommended that J.T.'s motion for summary judgment be denied, and that the District's cross-motion for summary judgment be granted, R&R at 1–2, 47. With briefing on J.T.'s limited objections now complete, *see* Def.'s Response to Pl.'s Obj., ECF No. 36; Pl.'s Reply to Def.'s Response, ECF No. 37, the motions for summary judgment are ripe for resolution.[3]

## II. LEGAL STANDARD

When dispositive motions have been referred to a Magistrate Judge for a Report and Recommendation, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3).

## III. DISCUSSION

Under the IDEA, the District of Columbia, like any State, is offered federal funding in exchange for providing students with disabilities a FAPE in the least restrictive environment. 20 U.S.C. § 1412(a). To ensure a FAPE, the IDEA "entitles each child with a disability to an [IEP] that is tailored to meet his or her unique needs." *N.W. v. District of Columbia*, 253 F. Supp. 3d 5, 9–10 (D.D.C. 2017) (internal citations omitted); *see also* 20 U.S.C. § 1414(d). For that reason, an IEP is "[t]he 'primary vehicle' for securing an appropriate public education." *Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, – F.3d –, No. 18-7028, 2019 WL 3242552, at *1 (D.C. Cir. July 19, 2019) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)). If the parent of a child with a disability believes that an IEP developed for his or her child fails to provide a FAPE, the parent may bring a complaint, to be resolved initially through an impartial administrative hearing. 20

---

[3] J.T. has requested an oral argument for her objections to the R&R. Pl.'s Obj. at 1. Local Civil Rule 7(f) leaves the decision whether to grant a request for a hearing "within the discretion of the Court." Here, the briefs adequately frame the issues for review and the request for a hearing is denied.

U.S.C. § 1415(b)(6)(A), (f)(1)(A).  A party aggrieved by the outcome of that hearing may bring a civil action in federal court.  *Id.* § 1415(i)(2)(A).

Federal jurisdiction over a claim brought under the IDEA, as any other claim, exists only if the claim presents a live case or controversy.  *See Olu-Cole*, 2019 WL 3242552, at *8.  Put differently, the claim must not be moot.  Enforcing "[m]ootness 'ensures compliance with Article III's case and controversy requirement by limit[ing] federal courts to deciding actual, ongoing controversies.'"  *Id.* (quoting *Aref v. Lynch*, 833 F.3d 242, 250 (D.C. Cir. 2016)).  Even if a claim once involved a live controversy, federal jurisdiction depends on the parties' continued stake in the claim's disposition and a federal court lacks jurisdiction "when it is impossible . . . to grant any effectual relief whatever to the prevailing party."  *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).

Mootness, however, is subject to exceptions.  "The Supreme Court has carved out one such exception for claims that are 'capable of repetition, yet evading review.'"  *Reid v. Hurwitz*, 920 F.3d 828, 832 (D.C. Cir. 2019) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).  This "exception applies when: '(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'"  *Id.* at 832–33 (quoting *Doe v. District of Columbia*, 611 F.3d 888, 894 (D.C. Cir. 2010)).  Separately, a case may not be moot if the controversy is inactive only because the defendant voluntarily ceased the challenged conduct.  *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307 (2012).  A defendant's voluntary cessation does not moot a case unless the "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth, Inc. v.*

7

*Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000). Otherwise, dismissal would simply permit the defendant to resume the challenged conduct. *Knox*, 567 U.S. at 307.

Here, the Magistrate Judge suggested that J.T.'s challenge to the adequacy of the 2017 IEP is moot because V.T.'s IEP was revised in July 2018. R&R at 36–38. Critically, J.T. has not sought retrospective relief for the year that V.T. was educated pursuant to the 2017 IEP because DCPS funded V.T.'s education for the 2017–18 school year at Kingsbury, *id.* at 36; *see also* Am. Compl. at 6 (omitting compensatory education from requested relief), which provided V.T. the educational accommodations that his parents had advocated be included in the 2017 IEP, Pl.'s Obj. at 11 n.5. As for the only two forms of relief that J.T. seeks to remedy the harm caused by the 2017 IEP—a declaration that the 2017 IEP was inadequate and an order that the 2017 IEP be changed to comport with J.T.'s view of V.T.'s educational needs at the time, *see* Am. Compl. at 6—neither would be effectual as the 2017 IEP no longer governs V.T.'s education, R&R at 36.

No exception to mootness, according to the Magistrate Judge, should save J.T.'s claims about the 2017 IEP. J.T.'s challenge to the 2017 IEP is not "capable of repetition" because "the relevant issue is narrow and targeted, focusing on certain specific restrictions that V.T.'s parents sought to include in the (now-expired) May 3, 2017 IEP." R&R at 38. Voluntary cessation also does not apply as DCPS did not cease enforcing the 2017 IEP due to litigation, but rather because of its annual obligation to reevaluate V.T.'s educational needs. *Id.* at 38–39 n.13.

J.T. objects to the R&R's treatment of mootness in several respects. First, J.T. argues that a declaratory judgment will provide relief despite the 2017 IEP's expiration because "[p]rior IEPs help establish a baseline for the development of future IEPs." Pl.'s Obj. at 11. Thus, a declaration about the adequacy of the 2017 IEP would shift expectations for V.T.'s future

8

accommodations. *Id.* For some students, that argument might hold water. Yet, for V.T., the adequacy of the 2017 IEP is irrelevant because, as J.T. notes in her objections to the R&R, V.T. has advanced since the 2017–18 school year. Pl.'s Obj. at 23–24. Irrespective of whether J.T. is right about the 2017 IEP, V.T. is not at the same level he was two years ago and declaring what accommodations V.T. needed then has no value now. Additionally, the 2018 IEP differs from the 2017 IEP in that the updated version "prescribes a maximum class of six students and minimal risk of noise and distraction from inside and outside of the classroom." Pl.'s Obj. at 10 n.4. Even as a baseline, then, the 2017 IEP has been replaced. *See N.W.*, 253 F. Supp. 3d at 14 ("[I]n appropriate circumstances, the development of a new IEP may render a challenge to a prior IEP moot, for example, when the new IEP resolves the previous subject of dispute.").

Second, J.T. attacks the R&R for discounting the "voluntary cessation" exception to mootness. According to J.T., "[i]t is by no means clear that DCPS will not again develop an IEP with provisions that directly contradict the recommendations of all his providers, without any basis for the contrary provisions." Pl.'s Obj. at 12. J.T. continues that DCPS has the power to change V.T.'s IEP and so "it is not 'absolutely clear'" that V.T. is free from DCPS's allegedly wrongful conduct. Pl.'s Reply at 4 (quoting *Laidlaw*, 528 U.S. at 189). Yet, the alleged wrong is depriving V.T. of a FAPE in 2017 because of the inadequate IEP which directed his education for that year. Contrary to J.T.'s position, that wrong, if it ever existed, is over. DCPS cannot turn the calendar back to 2017 and educate V.T. again pursuant to the purportedly faulty IEP. Nor can DCPS revive the 2017 IEP going forward as DCPS has a statutory obligation to revisit annually a student's IEP. 20 U.S.C. § 1414(d)(4)(A)(i).

Third, J.T. insists that her challenge to V.T.'s 2017 IEP presents an issue that is capable of repetition, yet likely to evade review, and thus is exempt from any mootness concerns. Pl.'s

9

Obj. at 13. Half the showing needed to establish this exception is met: an IEP has a shelf life shorter than the typical judicial proceeding to review an IEP. *See Jenkins v. Squillacote*, 935 F.2d 303, 307 (D.C. Cir. 1991) ("[T]here can be no doubt that a one-year placement order under the IDEA is, by its nature, 'too short [in duration] to be fully litigated prior to its . . . expiration.'" (quoting *Honig*, 484 U.S. at 322–23)). The Magistrate Judge did not disagree, concluding instead that J.T.'s challenge to the adequacy of the 2017 IEP is "not the sort of IDEA claim that courts have found capable of repetition." R&R at 37. On this point, J.T. maintains that "[i]t is virtually certain that there will be another IEP developed for [V.T.]" and "for years DCPS has exhibited a practice of ignoring V.T.'s parents and his providers when developing IEPs." Pl.'s Obj. at 14. For J.T., that history suggests disagreements about V.T.'s educational program are likely to recur. *Id.*

Certainly, conduct challenged under the IDEA may present a legal issue capable of repetition. J.T. cites several such cases. *See* Pl.'s Obj. at 13–14; Pl.'s Reply at 4–6. For example, in *Honig*, the challenged conduct called into question whether a school district may unilaterally change a student's placement because of behavior growing out of the student's disability. 484 U.S. at 318–20. That issue was likely to recur. *Id.* Similarly, in *District of Columbia v. Doe*, the D.C. Circuit applied this mootness exception because the case required determining "an IDEA hearing officer's authority to revise DCPS-imposed discipline upon finding that an infraction is not a manifestation of a disability"—an issue plainly capable of repetition. 611 F.3d at 895. Three other cases that J.T. cites also involved a legal question that transcended the specific facts which prompted the case. *See Jenkins*, 935 F.2d at 308 (describing the contested legal question as "the degree of specificity required of the District in providing notice to parents under the IDEA"); *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1041 (5th

10

Cir. 1989) (describing the contested legal question as the extent to which the statutory predecessor to the IDEA required educating students with special educational needs alongside students without similar needs); *Abney by Kantor v. District of Columbia*, 849 F.2d 1491, 1495 (D.C. Cir. 1988) (describing the contested legal questions as whether the District must continue educating a student while he cannot be bused safely to his primary educational program and whether the District must notify a student's guardian when educational services have ceased).

By contrast, other types of IDEA claims do not present legal issues likely to recur. Whether a student has been denied a FAPE is one such claim as it "is inherently fact-dependent, particularly where, as here, the denial is based on the inappropriateness of a student's IEP and school placement." *Mundo Verde Pub. Charter Sch. v. Sokolov*, 315 F. Supp. 3d 374, 382 (D.D.C. 2018). The same is true of claims that allege a specific deficiency in an IEP. *B.D. v. District of Columbia*, 817 F.3d 792, 803 (D.C. Cir. 2016) (finding as moot a claim that IEP failed to provide the appropriate educational placement for a student after the IEP was amended); *Turner v. District of Columbia*, 952 F. Supp. 2d 31, 38–40 (D.D.C. 2013) (finding as moot a claim that an IEP violated the IDEA for failing to include a plan for the student's transition from secondary to postsecondary education after the IEP was amended).

This case falls squarely in the latter camp. As J.T.'s pleadings and briefs in this court, and the administrative record, make abundantly clear, her claim is that the 2017 IEP was inadequate for V.T.'s educational needs at that time. *See* Am. Compl. ¶ 17 (listing failures of 2017 IEP); *id.* at 6 (requesting declaration that 2017 IEP failed to provide V.T. with an appropriate education); Pl.'s Obj. at 15–17 (arguing that J.T. had produced enough evidence at the administrative hearing to show that the 2017 IEP was inadequate); *id.* at 17–19 (arguing that DCPS did not produce evidence supporting provisions included in the 2017 IEP); *id.* at 19–23

(arguing that Magistrate Judge improperly relied on certain evidence in support of the adequacy of the 2017 IEP); Pl.'s Mot. at 14–18 (arguing about evidence offered at administrative hearing of V.T.'s educational needs in 2017); ECF No. 17-1 at 3, 5 (challenging DCPS's failure to develop an appropriate IEP and listing ways in which IEP failed to meet V.T.'s educational needs). Therefore, the Magistrate Judge appropriately conceived of the legal issue here as "narrow and targeted" and the challenged conduct—the educational program that DCPS devised for V.T. in 2017—as unlikely to recur. R&R at 38.

Finally, J.T. is wrong to warn that if her claim is moot "the District Court will never resolve an IEP claim unless it is brought on an emergency basis." Pl.'s Obj. at 14. V.T.'s 2017 IEP would be subject to judicial review if J.T. had brought a claim for compensatory education, which she did not. *Cf. Boose v. District of Columbia*, 786 F.3d 1054, 1058 (D.C. Cir. 2015) (ruling that modifications to a contested IEP do not render IDEA claim moot for plaintiff seeking compensatory education); *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 833 (D.C. Cir. 2006) (same). Additionally, J.T.'s claims about the adequacy of the 2017 IEP might still present a live controversy if DCPS had not developed a new IEP or had developed a new IEP without addressing the alleged shortcomings of the challenged version. *N.W.*, 253 F. Supp. 3d at 14 (rejecting argument that challenge to IEP was moot where the record did not "demonstrate the development of a new IEP, much less show that any new IEP settles the parties' disagreement"). Those circumstances, however, are not present here.

## IV. CONCLUSION

For the foregoing reasons, J.T.'s Motion for Summary Judgment, ECF No. 26, is DENIED. The District's Cross-Motion for Summary Judgment, ECF No. 27, is GRANTED

only as to J.T.'s challenge to the location of the 2017 IEP meeting. In all other respects, J.T.'s Amended Complaint, ECF No. 14, is DISMISSED as moot.

An Order consistent with this Memorandum Opinion will be contemporaneously entered.

**Date**: August 1, 2019

_____
BERYL A. HOWELL
Chief Judge